[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 507 
On Application for Rehearing
The opinion of January 8, 1999, is withdrawn and the following is substituted therefor.
We granted certiorari review to consider whether the Court of Civil Appeals erred in affirming the trial court's award of $29,106.20 in attorney fees and expenses to Michael Brown for successfully defending claims brought against him by Waterjet Systems, Inc. ("Waterjet"). The Court of Civil Appeals affirmed on September 26, 1997, without opinion. Waterjet Systems, Inc. v.Brown, 736 So.2d 686 (Ala.Civ.App. 1997) (table). For the reasons discussed below, we reverse and remand.
Waterjet sued Brown, a former employee of Waterjet, alleging (1) breach of an intellectual-property agreement, (2) misappropriation of Waterjet's trade secrets, in violation of the Alabama Trade Secrets Act, § 8-27-1 et seq., Ala. Code 1975, (3) conversion of Waterjet's documents, (4) unfair competition, and (5) breach of a fiduciary/agent relationship. In its complaint, Waterjet sought preliminary and permanent injunctions to prevent Brown from committing the wrongful acts alleged in its complaint and to require Brown to return documents that it alleged contained Waterjet's trade secrets. Waterjet also sought compensatory and punitive damages and sought attorney fees and costs as provided under the Alabama Trade Secrets Act.
The trial court granted Waterjet's request for a preliminary injunction, and Waterjet filed an injunction bond, pursuant to the conditions of the trial court's order, in the amount of $10,000. Brown then filed an answer and a counterclaim in which he alleged that Waterjet, by its lawsuit and its request to enjoin him, was engaging in an unlawful restraint of trade and was invading his privacy.
The trial court then took the following actions, on the parties' motions: (1) it entered a series of protective orders in order to protect Waterjet's trade secrets and other confidential information from public disclosure; (2) it entered a summary judgment in favor of Waterjet on Brown's counterclaims; (3) it denied Brown's motion for a summary judgment on all of Waterjet's claims; and (4) it entered an order setting the case for trial.
The day after the trial court set the case for trial, and nine months before the trial date, Brown made an offer of judgment to Waterjet. Brown offered to consent to a permanent injunction consistent with the preliminary injunction, on the condition that Waterjet pay him attorney fees and costs totaling together $15,000. Waterjet refused this offer.
On the day of the trial, Waterjet voluntarily dismissed its unfair-competition claim. It also sought, and received, a protective order closing the trial and requiring the jurors to take an oath of nondisclosure. Immediately before the seating of the jury, Brown moved to have the preliminary injunction "withdrawn," on the grounds that Waterjet, by dismissing its unfair-competition claim, had admitted *Page 508 
that it had no need for a preliminary injunction because it no longer believed Brown was going to compete with it. Waterjet responded by arguing that the preliminary injunction related to all of its claims and not just the unfair-competition claim. The trial court took Brown's motion under advisement.
The jury returned a verdict in favor of Brown on all remaining counts of Waterjet's complaint, and the court entered a judgment on that verdict. The trial court also dissolved the preliminary injunction, denied Waterjet's demand for a permanent injunction, and taxed costs against Waterjet. Brown then moved for payment of his attorney fees and expenses, totaling $79,185.72, basing his motion on three grounds: (1) that the trial court had dissolved the preliminary injunction; (2) that he had made an offer of judgment that Waterjet refused and that Waterjet had failed to secure a verdict as good as, or better than, the offer of judgment; and (3) that he was entitled to attorney fees under § 8-27-4(2)(a), Ala. Code 1975, because, he contended, Waterjet had sued him in bad faith for an alleged violation of the Alabama Trade Secrets Act. Brown attached to his motion affidavits detailing his expenses and attorney fees.
The trial court held a hearing on Brown's motion for expenses and attorney fees, at which Brown's attorney testified. Based upon the attorney's testimony and the evidence in the record of the trial, the court entered an order requiring Waterjet to pay Brown attorney fees and expenses, totaling together $29,106.20. Waterjet appealed, and the Court of Civil Appeals affirmed.
Waterjet argues that the trial court erred in ordering it to pay Brown's attorney fees and expenses. Waterjet maintains that none of the grounds in Brown's motion for attorney fees and expenses provided the trial court with the authority to award attorney fees and expenses. Alternatively, Waterjet contends that if the trial court had the authority to award attorney fees and expenses, that authority must have arisen from a wrongful issuance of the preliminary injunction, and, Waterjet says, an award of damages from the wrongful issuance of a preliminary injunction is limited to the amount of the bond, $10,000 in this case. We address these arguments in turn.
 I. Offer of Judgment
First, Waterjet argues that Brown was not entitled to attorney fees and expenses on the grounds that Waterjet rejected Brown's offer of judgment. Waterjet maintains that Brown's offer did not comply with the required elements of an offer of judgment under Rule 68, Ala. R. Civ. P. Also, Waterjet cites Atkinson v.Long, 559 So.2d 55 (Ala.Civ.App. 1990), for the proposition that under Rule 68 a defendant who is entitled to costs cannot recover attorney fees. Waterjet also contends that even if Brown's offer did comply with the rule's requirements, the judgment entered upon the jury verdict was more favorable to Waterjet than Brown's offer, and, therefore, that Brown is not entitled to expenses or attorney fees under Rule 68. Without addressing Waterjet's other arguments, we agree that Brown's offer of judgment did not provide a basis for an award of attorney fees and expenses, because Brown obtained a jury verdict in his favor.
Rule 68, Ala. R. Civ. P., provides a basis for an award of costs, but only when "the judgment finally obtained by the offeree is not more favorable than the offer." Thus, the plain language of Rule 68 states that a final judgment in the plaintiff-offeree's favor for an amount less than the amount of the offer is a prerequisite to the plaintiff-offeree's liability for costs. Accord Delta Air Lines v. August, 450 U.S. 346, 351 (1981) ("[T]he plain language of [Federal] Rule 68 confines its effect [to the case] in which the plaintiff has obtained a judgment for an amount less favorable than the defendant's settlement offer."). *Page 509 
In the present case, Waterjet, the plaintiff-offeree, did not obtain a judgment in its favor. Instead, the jury found for Brown, and the trial court entered a judgment in favor of Brown. Thus, Rule 68 does not apply to the present case. See Delta AirLines, supra. Accordingly, the trial court could not properly have held that Rule 68 provided a basis for an award of costs, so we need not address the problem presented by including both attorney fees and expenses in an award based on a rule that imposes liability for "costs." We must next determine whether the other two grounds stated in Brown's motion, i.e., the Alabama Trade Secrets Act and the dissolution of the preliminary injunction, provided a basis for the trial court's award of attorney fees and expenses.
 II. Alabama Trade Secrets Act
Waterjet argues that the Alabama Trade Secrets Act, § 8-27-1
et seq., Ala. Code 1975, does not furnish a basis for a recovery of attorney fees in the present case. Section 8-27-4(2) allows the prevailing party in an action based on an actual or threatened misappropriation of a trade secret to recover "reasonable" attorney fees if:
 "a. A claim of actual or threatened misappropriation is made or resisted in bad faith,
 "b. A motion to terminate an injunction is made or resisted in bad faith, or
 "c. Willful or malicious misappropriation exists. . . ."
In his posttrial motion for attorney fees and expenses, Brown did not argue that § 8-27-4(2)(b) or (c) provided a basis for an award of attorney fees, nor does he make that argument on appeal. Instead, Brown relies upon § 8-27-4(2)(a). Thus, the only question before this Court is whether Waterjet made its claim of misappropriation of a trade secret in bad faith.
Waterjet argues that it did not make its claim of misappropriation in bad faith, because, it says, it produced substantial evidence indicating that Brown had wrongfully misappropriated some of its trade secrets. Neither the Alabama Legislature nor this Court has defined the term "bad faith" as it appears in § 8-27-4(2)(a). We do note, however, that the Legislature has provided for the recovery of attorney fees under the Alabama Litigation Accountability Act ("ALAA"), § 12-19-270 et seq., Ala. Code 1975. Under the ALAA, a trial court must award attorney fees when a claim is brought "without substantial justification, either in whole or in part." § 12-19-272(a). "The phrase `without substantial justification' . . . means that [the claim] is frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation, as determined by the court." § 12-19-271(1). Because of the similarity in the purpose of § 8-27-4(2) and the purpose of the ALAA, we hold that the term "bad faith" under the Alabama Trade Secrets Act means the same as the phrase "without substantial justification" in the ALAA.[1] Therefore, we must examine Waterjet's conduct under that standard.
According to the record, Waterjet produced substantial evidence indicating that Brown had misappropriated trade secrets and possibly had planned to disclose those secrets or to use them in competition with Waterjet. Waterjet's employees testified that several of Waterjet's files containing trade secrets were missing from Brown's desk after Brown left his employment with Waterjet. Waterjet's employees also stated that they retrieved several documents *Page 510 
from Brown's computer that indicated he had plans to form his own company to compete with Waterjet by using Waterjet's trade secrets. The trial court noted this evidence when it denied Brown's motion for a summary judgment and when it denied his preverdict motion for a judgment as a matter of law; the court denied those motions on a conclusion that Waterjet, the nonmoving party, had produced substantial evidence in support of its claims. See § 12-21-12, Ala. Code 1975. Brown does not claim that the trial court erred in denying those motions.
Therefore, because Waterjet produced substantial evidence to justify its pursuit of a statutory cause of action, we cannot hold that Waterjet's claim was frivolous or groundless in fact or in law. Furthermore, Brown produced no evidence suggesting that Waterjet sued him for the purpose of harassing him or for any other improper purpose. Accordingly, we conclude that the record shows Waterjet did not act in bad faith in asserting a claim of misappropriation of a trade secret and that the trial court could not properly have found that § 8-27-4, Ala. Code 1975, provided a basis for an award of attorney fees. Thus, we must determine whether the dissolution of the preliminary injunction alone provided a basis for the recovery of attorney fees and expenses.
 III. Rule 65(c) A. Overview
Rule 65(c), Ala. R. Civ. P., requires that the party applying for a preliminary injunction give security "in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Thus, Alabama deviates from the analogous federal rule, Rule 65(c), Fed.R.Civ.P., to the extent that it makes attorney fees recoverable following a wrongful injunction.
A party that is wrongfully enjoined or restrained has "a cause of action for recovery under the surety bonds posted in accordance with Rule 65(c)." Talladega Little League, Inc. v.Anderson, 577 So.2d 1293, 1296 (Ala. 1991). A wrongfully enjoined or restrained party may also use Rule 65.1, which provides a motion procedure for enforcement of the liability of the surety. "In order for a party to be liable on the bond posted pursuant to Rule 65(c), the [trial] court must find that the party [enjoined] had been `wrongfully' enjoined." Marshall Durbin Co.v. Jasper Utilities Bd., 437 So.2d 1014, 1027 (Ala. 1983). On appeal, a trial court's award of "costs, damages, and . . . attorney fees" pursuant to a security bond will not be disturbed absent an abuse of discretion. Id. at 1027.
 B. Standards for Liability
Waterjet argues that Brown failed to produce any evidence indicating that he had been wrongfully enjoined. Waterjet argues that Brown was required to show bad faith in order to recover on the bond and that absent evidence of bad faith he cannot recover expenses and attorney fees. Waterjet cites Marshall Durbin Co.v. Jasper Utilities Bd., 437 So.2d 1014 (Ala. 1983), andChurchill v. Board of Trustees of the University of Alabama inBirmingham, 409 So.2d 1382 (Ala. 1982), for the proposition that good faith is a defense to an award of damages under an injunction bond. Waterjet also contends that even if Brown was wrongfully enjoined, an award of damages does not necessarily flow from a determination that a preliminary injunction was wrongfully issued.
Brown counters with the argument that a judicial determination that a party was wrongfully enjoined entitles the enjoined party to a right of action and costs, damages, and attorney fees on the injunction bond. He maintains that the trial court's dissolution of the bond amounts to a determination that he was wrongfully enjoined, and, therefore, that he was entitled to costs, damages, and attorney fees. Brown also contends that an award of costs, damages, *Page 511 
and attorney fees for wrongful injunction was within the discretion of the trial court and that the trial court did not abuse its discretion. Brown cites several cases in support of his arguments, including Union Springs Tel. Co. v. Green, 47 Ala. App. 427,255 So.2d 896 (Ala.Civ.App. 1971), and Luker v. Perry,351 So.2d 591 (Ala.Civ.App. 1977).
Waterjet argues that the cases cited by Brown are distinguishable because in those cases, it says, the courts relied upon Title 7, § 1043, Ala. Code 1940, which Rule 65(c) superseded, and, therefore, the more recent cases of Marshall Durbin andChurchill provide the standards for recovery on a bond, based on a wrongful injunction. Waterjet points out that one commentator has discussed the distinction between the new cases and the old ones and has argued that Marshall Durbin and Churchill stand for the proposition that the plaintiff's good faith is a basis upon which a trial court should deny recovery on an injunction bond. See Frank S. James III, Protecting Final Judgments: A CriticalOverview of Provisional Injunctive Relief in Alabama, 20 Cumb. L. Rev. 227, 255-60 (1990).
We note, however, that the earlier cases have not been overruled. We also recognize that only three Justices concurred in the portion of the opinion in Churchill that purportedly established new standards for recovery on an injunction bond and that in Churchill Chief Justice Torbert wrote a dissenting opinion based in part upon Union Springs. 409 So.2d at 1390-91. Therefore, we must now decide whether to follow the old line of cases or the more recent cases and whether to adopt a bad-faith requirement as the standard for recovery on a bond posted as a condition to obtaining an injunction. We also use this case as an opportunity to develop standards for the recovery of damages on such a bond.
We hold that a party does not have to prove bad faith to recover damages on a bond posted as a condition to obtaining an injunction. To the extent that Marshall Durbin, Churchill, and other cases imply that a party must prove bad faith to recover on a bond or that good faith is a defense to such a recovery, those cases are overruled. Consistent with the language of Rule 65(c), we hold that in order to recover damages on a Rule 65(c) bond the party seeking recovery need only establish that he or she was wrongfully enjoined or restrained.
Once a party establishes that he or she was wrongfully enjoined or restrained, that party has a right to recover damages and can recover those damages that are "the actual, natural and proximate result of the [wrongful] injunction." AlabamaCablevision v. League, 416 So.2d 433, 435 (Ala.Civ.App. 1982). These damages include compensation for injury, including attorney fees, incurred as the result of the injunction. However, the bond is not to be used to pay other damages that "the court may decree to be paid on the merits of the case." Myrick v. Finance Am.Credit Corp., 404 So.2d 700, 704-05 (Ala.Civ.App. 1981) (citations omitted.) The party can either use the motion procedure provided in Rule 65.1, Ala. R. Civ. P., or proceed under the party's right to an independent action for recovery on the bond. See Anderson, supra. If the party establishes that it was wrongfully enjoined and suffered damage and incurred costs or attorney fees as a proximate result of the wrongful injunction, the trial court must award compensation for the party's damage, costs, and attorney fees.
This holding is consistent with the policy long recognized by our courts that a party seeking an interlocutory injunction must pay for its incorrect belief that it is entitled to such an injunction. As Chief Justice Torbert noted in his dissent inChurchill:
"Our courts have stated:
 "`By filing the application and the required bond the applicant takes his *Page 512 
chance that there may be dissolution upon motion. He has, by making the bond, entered into a contract that in the event there is dissolution the bond becomes due for damages resulting from the issuance of the injunction. Upon breach of the condition of the bond a right of action thereon arises immediately. In requesting the extraordinary relief of a temporary injunction and making the bond the applicant in colloquial language "pays his money and takes his chances."'"
409 So.2d at 1390 (Torbert, C.J., dissenting) (emphasis added; citations omitted).
Although Rule 65(c) has contained the phrase "wrongfully enjoined or restrained" since its adoption, this Court has not before now had the opportunity to define that phrase. Federal courts have construed the same phrase in Rule 65(c), Fed.R.Civ.P., to mean that a party is wrongfully enjoined "when it turns out the party enjoined had the right all along to do what it was enjoined from doing." Nintendo of America, Inc. v. Lewis GaloobToys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994), cert. denied,513 U.S. 822 (1994); see, also, Blumenthal v. Merrill Lynch, Pierce,Fenner Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990) ("A party has been `wrongfully enjoined' under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act."); Note, Recovery for WrongfulInterlocutory Injunctions Under Rule 65(c), 99 Harv. L. Rev. 828, 836-42 (1986) ("applicant should be liable only if the injunction prohibited the other party from doing what it was legally entitled to do").
We agree with this definition of the phrase "wrongfully enjoined or restrained." It is a simple definition that provides clear guidance for a trial court. Furthermore, this definition requires that the trial court base the liability on the bond on the merits of the plaintiff's claim and not on some procedural defect. See Note, Recovery for Wrongful Interlocutory InjunctionsUnder Rule 65(c), 99 Harv. L. Rev. 828, 838-39 (1986).
Therefore, we expressly reject Waterjet's contention that the term "wrongfully enjoined" requires an element of bad faith or that good faith is a defense to claimed liability on an interlocutory injunction bond. We also reject Waterjet's argument that a trial court cannot award damages on an interlocutory-injunction bond unless the moving party produces evidence that the other lacked good faith in bringing the action or in conducting the litigation. A party's good faith is irrelevant to the determination of liability on such a bond. We agree with what the United States Court of Appeals for the Ninth Circuit stated in Nintendo:
 "Good faith in the maintenance of litigation is the standard expected of all litigants. That a party lives up to this standard simply means the party did what it ought to have done. On the other hand, if a party obtains a preliminary injunction in bad faith, that party `flunks [the good faith test and] the presumption in favor of enforcement [of the bond] congeals virtually into a rock.'"
16 F.3d at 1037, quoting National Kidney Patients Ass'n v.Sullivan, 958 F.2d 1127, 1135 (D.C. Cir. 1992), cert. denied,506 U.S. 1049 (1993).
In so holding, we also overrule the distinction made inChurchill between an "ordinary" and a "nonordinary" injunction for purposes of determining liability on an injunction bond. See 409 So.2d at 1389. The right to recover on a bond posted as a condition to obtaining an injunction arises once the party establishes that he or she was wrongfully enjoined, and the right does not depend on whether the injunction was ordinary or nonordinary. The only questions a trial court must answer are (1) whether the party was wrongfully enjoined or restrained and (2) what, if any, damages the party is entitled to recover. Furthermore, a trial court *Page 513 
cannot, on its own motion, discharge the principal and the surety on the interlocutory-injunction bond. As Chief Justice Torbert correctly noted in his dissent in Churchill, the trial court must give the enjoined or restrained party the opportunity to proceed against the injunction bond, to prove that he or she was wrongfully enjoined or restrained, and "to prove their damages, if any, by the imposition of the injunction." 409 So.2d at 1391.
Of course, we do not require that a plaintiff sit by and wait for the defendant to request damages under the injunction bond. The plaintiff can force the issue by requesting the court to discharge the principal and the surety on the injunction bond. This procedure allows the defendant to decide whether to attempt to recover damages on the injunction bond and gives the plaintiff a procedure to avoid endless concern about whether it will be held liable on the injunction bond. With these standards in mind, we turn to the award of attorney fees and expenses in the present case.
Waterjet argues that this award must be reversed because, it argues, Brown presented no evidence indicating that he was wrongfully enjoined and because the trial court did not specifically find that he was wrongfully enjoined.
We are unable to determine from the record before us whether Brown produced evidence indicating that he was wrongfully enjoined, that is, that he, as the enjoined party, at all times had the right to do the enjoined acts and that he suffered damage as the actual, natural, and proximate result of the injunction. Therefore, we remand this case for the Court of Civil Appeals to direct the trial court to hold a hearing on this issue. Because we remand this case, we address Waterjet's other arguments.
 C. Limit of Liability
Waterjet also argues that the trial court erred in awarding attorney fees and expenses above the amount of the bond, because, it argues, recovery against an injunction bond is limited to the face amount of the bond. This Court has never squarely addressed the issue whether recovery on an injunction bond is so limited. Most courts have held that recovery is limited to the amount of the bond. Their reasoning has been that "encouraging access to courts outweighed concern for the party facing inadequate bonds, or that such party could have moved for an increase in the amount of the bond when he saw that his losses were mounting." Jay M. Zitter, Annotation, Recovery of Damages Resulting From WrongfulIssuance of Injunction as Limited to Amount of Bond, 30 A.L.R.4th 273, 276 (1984). Another policy in favor of limiting recovery to the amount of the bond is that it gives the plaintiff notice of the extent of his or her liability should it ultimately be determined that the injunction was wrongfully issued.
Based upon these policies, we join the majority of jurisdictions and hold that the recovery on an injunction bond is limited to the amount of the bond and that a defendant cannot recover against the principal or the surety of an injunction bond an amount in excess of the amount of the bond as stipulated or determined by the trial court. See 13 James Wm. Moore, Moore'sFederal Practice § 65.53 (3d ed. 1998). We expressly limit this holding to those cases in which the plaintiff acts in good faith. See id., citing Coyne-Delany v. Capital Dev. Bd. of Ill.,717 F.2d 385 (7th Cir. 1983). If a plaintiff seeks an interlocutory injunction in bad faith, the defendant can recover damages from the plaintiff in excess of the amount of the bond, or the defendant can pursue an independent action for malicious prosecution. Furthermore, a defendant cannot recover damages from the surety in excess of the amount of the bond, unless, of course, the plaintiff is also the surety. Because there is no evidence of bad faith in the present case, Brown was entitled to no more than $10,000, the amount of the injunction bond. *Page 514 
 D. Attorney Fees
Waterjet argues that the trial court could not award any attorney fees; it argues that where an injunction is only an incidental reason for the attorney fees, not the principal reason, only the fees incurred in dissolving the injunction and incurred before trial of the action on the merits are recoverable, citing C. Gamble, Alabama Law of Damages § 9-20 (Supp. 1996) (citingLuker v. Perry, 351 So.2d 591 (Ala.Civ.App. 1977)). Waterjet also challenges the trial court's order because of the court's failure to set forth the factors it relied upon in making the award. As previously noted, the analogous federal rule is silent on attorney fees, so we are guided solely by our own cases.
Before law and equity were merged by the promulgation of Rule 2, Ala. R. Civ. P., in 1973, the question whether one could recover attorney fees as damages in an action on an injunction bond had been described, in McGraw v. Little, 198 Ala. 553,73 So. 915 (1917), as dependent on which one of three classifications applied to the injunctive relief. The first category described those cases in which the sole or principal purpose of the case was permanent injunctive relief, such as an action to compel some act the omission of which would be wrongful and the legal remedy for the omission of which would be inadequate, and in which the action began and ended with the injunction. In those cases, the recoverable attorney fees included fees for services rendered through, and including, the trial on the merits. The second category described cases where the complaint sought equitable relief against mistake or fraud or asserted other equitable remedies such as enforcement of a trust and fiduciary duties, and where preliminary or final injunctive relief ancillary to enforcement of the equitable remedy was appropriate. In those cases, the injunctive relief was incidental and attorney fees were recoverable only for procuring the dissolution of the injunction. The third category included actions to enjoin the enforcement of a judgment; they were treated the same as cases falling in the first category, where attorney fees were recoverable for services rendered through, and including, a trial on the merits.
Waterjet's claims for injunctive relief, taken alone, would be included under the first category of cases described in McGrawv. Little, i.e., cases in which the sole or principal purpose was to secure permanent injunctive relief, for example, an action to compel some act the omission of which would be wrongful and the legal remedy for the omission of which would be inadequate, and which began and ended with the issuance of the injunction. Under the rule of McGraw v. Little, attorney fees for such cases are recoverable for services through and including the trial on the merits. However, because of the merger of law and equity, Waterjet was permitted to pursue separate claims for money damages. The fact that Waterjet's claim for an injunction is now governed by the Alabama Rules of Civil Procedure should not convert that claim for injunctive relief into an ancillary matter, as Waterjet contends. The defendant's attorney fees related to the claim for injunctive relief, through the trial on the merits, are recoverable, even though difficult questions of allocation may be presented.
We have examined the record as it regards the award of attorney fees and we cannot know with certainty whether the amount of $10,000 — the amount of the bond — is properly allocable to matters germane to the issues presented in the defense of Waterjet's claims for injunctive relief.[2] We are also mindful that in the trial court Brown claimed a right to attorney fees on three discrete grounds, two of which we have rejected. We therefore reverse the judgment of the Court of Civil *Page 515 
Appeals and remand the case so that the Court of Civil Appeals may instruct the trial court (1) to hold a hearing to determine whether Brown was wrongfully enjoined and whether he suffered damage as a proximate result of being wrongfully enjoined, and (2), if the trial court finds that Brown was wrongfully enjoined and that Waterjet caused him to expend money for attorney fees in defense of Waterjet's claims for injunctive relief, to calculate the amount of attorney fees allocable to the defense of Waterjet's claims for injunctive relief, in a manner consistent with the guidelines we have established.
OPINION OF JANUARY 8, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED WITH INSTRUCTIONS.
Hooper, C. J., and Maddox, Houston, Kennedy, Cook, See, Brown, and Johnstone, JJ., concur.
[1] We also note that this definition is consistent with the federal courts' definition of "bad faith" under the bad-faith exception to the American Rule of attorney fees. See, e.g.,Sierra Club v. United States Army Corps of Engineers,776 F.2d 383, 390 (2d Cir. 1985) (holding that "to award [attorney] fees under the bad faith exception [to the American Rule], a court must find clear evidence that the losing party's claims were `entirely without color and made for reasons of harassment or delay or for other improper purposes.'").
[2] Brown has not claimed only attorney fees as damages arising from his having been subject to a wrongful injunction.